Joseph C. Crudo, Esq. SBN#  263993
MIDWAY LAW FIRM APC
4275 Executive Square Suite 200
La Jolla, CA 92037
Telephone: (760) 484-1203
Email: joseph@midwaylawfirm.com;
bobby@midwaylawfirm.com

Attorney for PLAINTIFF JANE DOE

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>      Plaintiff,<br><br>  vs.<br><br>DR. PHILIP TAYLOR SOBASH, DR. FRANK SOBASH and DOES 1 through 50, Inclusive<br><br>      Defendants. | Case No: '25CV2438 JAH  DDL<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>**1.NEGLIGENCE PER SE (18 U.S.C § 2257)**<br>**2.INVASION OF PRIVACY**<br>**3. INVASION OF PRIVACY-PUBLIC DISCLOSURE OF PRIVATE FACTS**<br>**4. INVASION OF PRIVACY-INTRUSION INTO PRIVATE AFFAIRS**<br>**5. APPROPRIATION OF LIKENESS**<br>**6. APPROPRIATION OF NAME, PHOTOGRAPH AND LIKENESS**<br>**7. FALSE LIGHT**<br>**8. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>**9. CIVIL ACTION BY CRIME VICTIM**<br>**10. NEGLIGENCE**<br><br>**JURY TRIAL DEMANDED** |

1

JANE DOE (herein referred to as "PLAINTIFF" hereby alleges as follows:

**PRELIMINARY STATEMENT**

1.      DR. PHILIP TAYLOR SOBASH   "DEFENDANT" is a physician who practices internal medicine and is a serial sexual predator who convinces young women into sending nude images to him and then posts the images with his victims' names and other personal identifying information onto notorious websites, inciting others to anonymously harass and attack his victims. He sells the images for personal gain. But, more than that, he enjoys harming his victims.

2.      On or about July 6, 2020, Jane Doe began a relationship with Defendant, who she met through an online dating site.  As the relationship developed, Dr. Sobash asked Jane Doe for sexually explicit photographs of herself between July 6, 2020 and May 26, 2021.

3.      This complaint relates to DEFENDANTS continued distribution of Jane Does's photographs.

4.      Doe has discovered that from the very inception of their relationship, Defendant violated that consent by publishing the private photographs booths to embarrass Jane Doe and for pecuniary gain, including selling the images commercially on a variety of websites, including a teen pornographic website

without Jane Does's knowledge or consent for the purpose of extorting her.

5.    While Jane Doe consented to Dr. Sobash possessing the photographs, she never consented to their further distribution, and she most certainly never consented to their commercial distribution.

6.    Even after numerous settlement agreements with other victims, Dr. Sobash, continued to distribute the same images of the girls he settled with, violating the terms of those agreements.  Additionally, he continued to solicit and non-consensually distribute lewd images over the internet.

7.    The serial nature of Dr. Sobash's offenses compound the wrongful acts complained of and justify enhanced punitive damages, as Dr. Sobash will not be deterred from continuing his conduct otherwise.

8.    This complaint relates to Dr. Sobash's continued distribution of Jane Doe's photographs.

9.    At all times material, Dr. Frank Sobash (Herein referred to as "DEFENDANT DR FRANK SOBASH had personal knowledge that his son, DEFENDANT DR PHILIP TAYLOR SOBASH was victimizing women on the internet and was paying the multiple victims to dismiss their lawsuits based on the same allegations as made herein.

## THE PARTIES

10.    Plaintiff "Jane Doe" proceeds anonymously pursuant to the "sensitive and highly personal nature" exception to the general party-publicity rule. Plaintiff resides in San Diego, California and domiciled in California.

11.    At all times material, Defendant Philip T. Sobash, MD resided in Austin, Texas where upon information and belief practices/practiced internal medicine at multiple medical clinics in different states.

12.    Defendant Frank Sobash is the Chief Executive Officer of the South Carolina Oncology Associates headquartered in Columbia, South Carolina and the father of DEFENDANT, Dr. Philip Taylor Sobash.

13.    On December 13, 2024, Defendant Philip Taylor Sobash was arrested in in Austin, Texas in Case Number: 24-mj-08885 for sexually explicit conduct with a minor by using his computer, in violation of laws regulating interstate and foreign commerce.  He was also charged with knowingly receiving child pornography. (A true copy of the Indictment is attached as Exhibit A)

**JURISDICTION AND VENUE**

14. This Court has subject matter jurisdiction over this base pursuant to 28 U.S.C. §§1 1331 (federal question) 1332 (diversity jurisdiction) § 1367 (Supplemental jurisdiction).

15. Federal question jurisdiction is proper because this case involves application of 18 U.S.C. 257 to Dr. Sobash's conduct.

16. Diversity jurisdiction is proper because the parties are residents of two different states, and the amount in controversy exceeds $75,000.

17. This Court has personal jurisdiction over Defendant because he frequently and repeatedly directed conduct specifically at a resident of this state and Plaintiff's claims arise directly from these contacts, and the harm Plaintiff suffered from this conduct was felt in this state. Dr. Sobash expressly aimed his conduct at a known resident of this state and judicial district, caused harm in this judicial district, and did so knowingly and not merely fortuitously.

18. Venue properly lies in this Court because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

# FACTUAL BACKGROUND

19.   In July of 2020, Jane Doe was in her early twenties and enrolled as a college student.

20.   In June of 2020, Jane Doe was contacted on an online dating site by Defendant. The two took the relationship off the website and began to text each other.

21.   Over the course of their text conversations, Defendant requested that Jane Doe provide him with sexually explicit images.

22.   Dr. Sobash proposed giving Jane Doe small amounts of money for these photographs.

23.   Dr. Sobash agreed that the photos would be for his use only and that they would not be redistributed.

24.   Defendant sent payment to Jane Doe through Venmo under the name Philip Sobash.

25.   These images were sent under the agreement and with the assurance that they were for his eyes only; Jane Doe would not have sent explicit images if they were not to be kept confidential.

26.   This created a "consent boundary" that Doe would send him intimate

photographs, but they were to be kept confidential.

27.     But for this consent boundary, Jane Doe would not have remained in the relationship with Dr. Sobash and would not have sent him her photographs.

28.     Starting in July of 2020 through May of 2021, Jane Doe sent Dr. Sobash nearly seventy photographs and videos. During this same period of time, Dr. Sobash sent her gifts in terms of money and items.

29.     Often, Dr. Sobash would make unusual requests and would send her props like sex toys to photograph herself with and then he would direct her. Jane Doe had developed trust in Dr. Sobash and, as a result, would often comply with his requests.

30.     On the evening of October 3, 2023, Jane Doe received a message request on Facebook from an unknown person who used images which she had sent only to Dr. Sobash for the purpose of blackmailing her.  On June 18, 2024, Jane Doe received a message request from a different stranger who provided a link to a forum where the Defendant had published photographs of her.  This webpage, which already had received tens of thousands of views at the time, included Jane Doe's true name alongside various and recent images from her social media accounts.

31.    In the months that followed, Jane Doe continued receiving unwelcome message requests from strangers regarding her new images.  After conducting an online search of the images she had sent only to Dr. Sobash, she discovered *nineteen* other active webpages and forums that contained these photos.

32.    A civil suit filed against Dr. Sobash by another victim on June 30, 2021, in the United States District Court for the Eastern District of Louisiana, bearing case number 21-1281, described how the victim discovered that Dr. Sobash had posted her pornographic images online for commercial gain.  This gave Jane Doe reason to believe that her posts were actually made-to-order requests from anonymous men online to Dr. Sobash's 'customers'.  He would pretend that they were his personal requests, and he manipulated the relationship he had with Jane Doe by making these specific requests as if they were merely his own personal fetishes.

33.    Dr. Sobash was in effect acting as a commercial producer – creating and distributing these pornographic images to his customers for profit.

34.    Defendant has not followed record keeping provisions outlined for visual depictions of actual and simulated sexually explicit conduct outlines in 18 U.S.C. §§ 2257,  despite the fact that he was acting as a commercial producer of pornography.

35.     Jane Doe was entirely unaware she was being used as a commercial

pornographic actress. She never consented to participate in pornography

and had no interest in doing so; she was pursuing a career in medicine.

Had Dr. Sobash properly requested the records, as required under

federal law, Jane Doe would have been made aware of the fact that she

was an unwitting commercial porn subject and able to withhold consent.

36.     The online publication of these pornographic images has had a profound

and devastating impact on her life. As a result of the images being made

public, Jane Doe underwent several months of inpatient therapy, forcing

her to take a year off from college. Additionally, after her family

members discovered the images online, she was disowned and

disinherited–losing access to her trust fund and any future financial

support. This resulted in significant financial hardship, forcing her to

transfer colleges and relocate states against her will.

37.     As a result of Dr. Sobash's actions, a civil suit was filed against him by

another victim on June 30, 2021, in the United States District Court for

the Eastern District of Louisiana, bearing case number 21-1281.

38.     After the suit (Case No. 21-1281) was filed, the parties reached a

settlement agreement in which  Dr. Sobash agreed to keep the status

and/or resolution of the litigation confidential, and further agreed to cease distributing the photographs of the victim named in that case.

39.    Per the settlement agreement, the confidentiality provision does not apply to disclosures made that are reasonably necessary to enforce its terms.

40.    Shortly after the settlement agreement was reached, Dr. Sobash again began distributing the photographs of the victim that had been at issue in that lawsuit.

41.    This constituted a breach of the settlement agreement as well as the underlying claims for relief.

42.    Additionally, after the settlement was executed, Dr. Sobash publicly discussed the litigation online and made disparaging remarks about the victim in violation of the settlement terms.

43.    Upon information and belief, the settlement in case number 21-1281 (Eastern District of Louisiana) was funded by Dr. Frank Sobash, who had full knowledge of his son's misconduct in that matter. In addition, Defendant funded more than a dozen legal settlements involving his son's predatory conduct–believed to be in the teens–demonstrating a longstanding pattern of financial enablement. Defendant Dr. Frank

Sobash provided financial support to resolve the lawsuit and avoid judgement. His involvement in settling prior litigation based on similar allegations demonstrates both his awareness of his son's pattern of behavior and his ability to intervene. Despite this, he chose to continue funding the fallout without taking meaningful steps to prevent future harm.

44.   The public and deliberate dissemination of Jane Doe's images, along with her personal identifying information, has caused her extreme distress, leading to severe anxiety and depression. She suffers from intrusive thoughts, fearing that the strangers viewing her nude pictures online will continue to harass her and may also target her loved ones. The estrangement from her family, after they discovered the images online, has intensified her feelings of isolation, grief, sadness, and shame. As a medical student simultaneously pursuing a master's in psychology, her once-bright career aspirations now feel increasingly out of reach, as she is reluctant to engage with social media–one of the most critical tools for professional development in her field–due to the stalking and harassment she faces online. The fear of further exposure, the constant invasion of her privacy, and the devastating consequences she has already faced have left her feeling trapped and hopeless in her personal and professional life.  ane Doe is forced to spend hours a week

scrolling for the images of her and submitting requests for copyright infringement under the Digital Millennium Copyright Act (the "DMCA").

## FIRST CLAIM FOR RELIEF

### Negligence Per Se (Violation of 18 U.S.C. § 2257)

45.   Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the preceding paragraphs.

46.   In order to combat child pornography and nonconsensual pornography, Congress passed 18 U.S.C. § 2257.

47.   Dr. Sobash violated 18 U.S.C. § 2257 by commercially distributing pornography without the proper verification codes, which could only have been obtained from Jane Doe.

48.   Dr. Sobash did not even seek, much less maintain, the records required under 18 U.S.C. § 2257.

49.   Dr. Sobash also did not provide any notice or statement on any copies of the photos or videos he commercially distributed required under 18 U.S.C § 2257(e).

50.   Dr. Sobash's violation of 18 U.S.C § 2257 was knowing and deliberate.

51.   Dr. Sobash's violation of 18 U.S.C. §2257 was the actual and proximate

cause of Plaintiff's injuries.

52.     Plaintiff's injuries resulted from Dr. Sobash's nonconsensual pornography, which is an occurrence of the nature which 18 U.S.C. § 2257 was designed to prevent.

53.     As a victim of nonconsensual pornography, Plaintiff is one of the class of persons for whose protection 18 U.S.C. § 2257 was adopted.

54.     As a direct and proximate result of Dr. Sobash's violation of 18 U.S.C. § 2257, Jane Doe has suffered substantial injuries, including harm to her reputation, emotional pain and suffering, loss of educational and career opportunities, significant financial harm due to the loss of both her family's support and a substantial inheritance, and profound disruption to her personal relationships.

**SECOND CLAIM FOR RELIEF**

**Invasion of Privacy - Generally**

55.     Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the preceding paragraphs.

56.     Under California law, Jane Doe has a statutory right not to have her sexually explicit images and videos publicly distributed without her consent.

57. Jane Doe had a reasonable expectation that the nude images would remain private because Defendant explicitly assured her that the images were for her exclusive private use.

58. In November of 2023, Jane Doe discovered that Defendant had posted the images and videos on websites without obtaining her consent from the inception of their relationship.

59. Defendant additionally posted Jane Doe's photographs after September 7, 2023.

60. The distributed images and videos exposed the intimate body parts of Jane Doe.

61. By posting the images on the public internet, Defendant willfully coordinated the harassment of Jane Doe. Moreover, he provided all of the metadata, including her name and private personal information obtained through apparent background searches, with the intent to embarrass and harass her further.

62. As a direct and proximate result of Defendant's conduct, Jane Doe suffered extreme loss of reputation, emotional and finacial distress, shame, mortification, isolation and hurt feelings.

### THIRD CLAIM FOR RELIEF

### Invasion of Privacy – Public Disclosure of Private Facts

63.   Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the preceding paragraphs.

64.   Through the internet, with a reckless disregard to any consequences or for the fact that reasonable persons would find his actions highly offensive, Defendant publicly distributed and disclosed sexually explicit images and videos of Jane Doe without her consent.

65.   These images and videos were of a highly private and personal nature.

66.   Jane Doe only provided sexually explicit images and videos to Defendant on the express understanding he would not distribute them to anyone else.

67.   Defendant knew that these images and videos were private.

68.   Jane Doe's nude images were not of any reasonably legitimate concern to the public.

69.   As a direct and proximate result on Defendant's blatant actions, Jane Doe has suffered substantial injuries, including harm to her reputation, emotional pain and suffering, loss of educational and career opportunities, significant financial loss, and significant disruption to her personal relationships.

## FOURTH CLAIM FOR RELIEF

### Invasion of Privacy – Intrusion into Private Affairs

70.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the preceding paragraphs.

71.    Jane Doe has the right to be secure from unreasonable intrusion upon her solitude, seclusion, and private affairs.

72.    The nonconsensual publication of Jane Doe's nude images, alongside her personal identifying information is an invasion of something that is entitled to be private or would be expected to be private.

73.    Jane Doe actually expected the nude images and her personal identifying information to remain private because Defendant explicitly told Jane Doe the images were for his exclusive private use.

74.    Instead, Defendant posted the images and Jane Doe's personal name onto the public internet.

75.    By posting the images with Jane Doe's personal information, Defendant willfully orchestrated the harassment of Jane Doe.

76.    As a result of the invasion, Jane Doe was harassed, and stalked.

77.    The intrusion was physical in that the incoming contacts on social media and her phone were inescapable, intruding upon her life, no matter where she went.

78.    The circulation of the images with her personal identifying information

and the harassment of Jane Doe caused by Defendant's actions continue to date.

79. The invasion Jane Doe experienced was substantial and highly offensive or objectionable to a reasonable person.

80. As a direct and proximate result of Defendant's conduct, Jane Doe suffered extreme emotional distress and financial costs.

## FIFTH CLAIM FOR RELIEF

## (Appropriation of Likeness)

81. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the preceding paragraphs.

82. Under California law, Jane Doe has the right to be secure from an appropriation of her name or likeness.

83. Defendant published images and videos containing Jane Doe's name and likeness.

84. The publication of Jane Doe's nude images and incitement of harassment were acts done by Defendant without Jane Doe's permission.

85. Jane Doe actually expected her nude images and personal information to remain private because Defendant promised Jane Doe he would not

share this information (i.e. the images and personally identifying information).

86.    Jane Doe was readily identifiable in the explicit images and information Defendant distributed.

87.    Defendant knowingly published Jane Doe's images and videos with actual knowledge that Jane Doe did not consent to this publication.

88.    Defendant's acts were done for the benefit of somebody other than Jane Doe.

89.    Defendant benefited – and continues to benefit – from whatever fetish his cruel and sadistic conduct may have satisfied.

90.    There is a direct connection between Defendant's use of Jane Doe's images and videos and his commercial purpose, ad Defendant benefited by posting the images as pornography.

91.    The circulation of the images with Jane Doe's personal identifying information and the harassment of Jane Doe caused by Defendant continues to date.

92.    As a direct and proximate result of Defendant's conduct, Jane Doe suffered extreme emotional distress and financial cost.

93.    Pleading in the alternative, assuming California law applies, California also recognizes appropriation as a common law claim for relief. *See Olan Mills, Inc. of Tex. v. Dodd*, 234 Ark. 495, 353 S.W.2d 22 (1962) (adopting the claim); *see also* Restatement (Second) of Torts § 652C (1977).

## SIXTH CLAIM FOR RELIEF

### Appropriation of Name, Photograph, and Likeness

94.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the preceding paragraphs.

95.    At all times material, Jane Doe has an individual property right in her name, photograph, or likeness.

96.    Plaintiff alleges that "a person who commercially uses the name, … photograph, or likeness or an individual is liable … for damages and disgorgement of profits, funds, goods, or services …"

97.    Defendant published images and videos containing Jane Doe's name, photograph, and likeness.

98.    The publication of Jane Doe's nude images and incitement of harassment were acts done by Defendant without Jane Doe's permission.

99.   Jane Doe actually expected her nude images and personal information to remain private because Defendant promised Jane Doe he would not share this information (*i.e.* the images and personally identifying information).

100.   Jane Doe was readily identifiable in the explicit images and information Defendant commercially sold and distributed.

101.   Defendant knowingly published Jane Doe's images and videos with actual knowledge that Jane Doe did not consent to this publication.

102.   Defendant's acts were done for the benefit of somebody other than Jane Doe.

103.   Defendant benefitted – and continues to benefit – from whatever fetish his cruel and sadistic conduct may have satisfied.

104.   There is a direct connection between Defendant's use of Jane Doe's images and videos and his commercial purpose, as Defendant benefitted by posting the images as commercial pornography.

105.   The circulation of the images with Jane Doe's personal identifying information and the harassment of Jane Doe caused by Defendant continues to date.

106.   As a direct and proximate result of Defendant's conduct, Jane Doe suffered extreme emotional distress and financial cost.

107.   Defendant, by his actions, has violated state and federal laws.

108.   Plaintiff alleges that she is entitled to an award of all damages suffered as a result of Defendant's commercial use of her name, photograph, and likeness, as well as disgorgement of all profits attributable to his commercial use of her name, photograph, and likeness.

109.   Under federal law, Jane Doe is entitled to an injunction restraining Defendant's unauthorized commercial use of her name, photograph, and likeness.

## SEVENTH CLAIM FOR RELIEF

### False Light

110.   Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the preceding paragraphs.

111.   Jane Doe has the right to be secure from publicity that reasonably places Jane Doe in a false light before the public.

112.   Defendant distributed Doe's sexually explicit photographs to websites with the understanding that Doe's photographs would present Doe as a sexually promiscuous woman, commercial pornography model/actress, or an escort.

113.   Defendant also presented Doe's sexually explicit photographs on websites with the intention of presenting Doe as a sexually promiscuous

woman, commercial pornography model/actress, or an escort, including

teen porno websites subjecting Jane Doe to public shame and

embarrassment.

114.  Jane Doe is not a sexually promiscuous woman, commercial

pornography model/actress, or an escort.

115.  Defendant, at all times when disclosing or implying these false or

fictitious facts, had actual knowledge that they were false and would

place Jane Doe in a false light, or acted with reckless disregard as to

their truth or falsity or the false light in which they would cast Jane Doe.

116.  Such an association is highly offensive to the ordinary reasonable

person under the circumstances.

117.  The publication or implication of these false or fictitious facts

continues to date.

110.  As a direct and proximate result of Defendant's actions, Jane Doe has

suffered extreme emotional suffering, injury to her reputation, and

economic loss.

## EIGHTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress / Outrage

111.  Plaintiff re-alleges and herein incorporates by reference the allegations

set forth in the preceding paragraphs.

112.  Defendant's publication of Jane Doe's images alongside her personal identifying information onto a forum dedicated to inciting harassment and abuse was done with the specific intent of causing extreme emotional distress to Jane Doe, or with the reckless disregard for the probability of causing extreme emotional distress.

113.  Defendant's conduct was extreme and outrageous.

114.  Defendant's solicitation and publication of the images onto the internet directly caused Jane Doe's privacy violation and the harassment and torment from third parties publishing and sharing her images online.

115.  Jane Doe experienced severe emotional distress as a direct and proximate result of Defendant's actions.

116.  Pleading in the alternative, if California law applies, California recognizes intentional infliction of emotional distress as an outrage claim.

**NINTH CLAIM FOR RELIEF**

**Civil Action by Crime Victim**

117.  Plaintiff is a person injured by reason of conduct of another person that would constitute a felony under California law.

118.  The predicate felonies are "unlawful acts regarding computers," prohibited by California law. Specifically, Defendant knowingly and

23

without authorization obtained data – Plaintiff's photographs – and published them on sexually explicit websites.

119.   These actions were felonious because Defendant obtained and transferred these photographs through a scheme to defraud Plaintiff into creating and providing the photographs.

120.   Alternatively, these actions are felonies because Defendant received in excess of $500 in return for transferring Plaintiff's photographs to websites, which money is rightfully the property of Plaintiff.

## TENTH CLAIM FOR RELIEF

### Negligence

### (Against Defendant Dr. FRANK SOBASH)

121.   Plaintiff alleges that DEFENDANT, DR FRANK SOBASH is the father of DEFENDANT PHILIP TAYLOR SOBASH that has a documented history of the alleged misconduct as stated herein and upon information and belief has personally settled with the victims in other lawsuits as in the case at bar.

122.   The elements of a cause of action for negligence are well established. They are (a) a legal duty to use due care; (b) a breach of such legal duty; (c) the breach as the proximate or legal cause of the resulting injury.

(*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917

[50Cal.Rptr.2d 309, 91 1 P.2d 496]

123.  At all times relevant herein, Defendant  had a duty to exercise

reasonable care as a licensed medical doctor to protect innocent persons

from being victimized on the internet by his son who is a sexual

predator that has settled multiple civil lawsuits and recently arrested by

the Department of Justice for sex crimes against minors.

124.  As outlined in this complaint, Defendant was aware of prior litigation

arising from his son's misconduct, including a federal case in which his

son breached a settlement agreement by continuing to distribute the

victim's images. Defendant had actual knowledge of his son's pattern of

predatory behavior, including the repeated unauthorized distribution of

pornographic images of women without their consent. Rather than

intervening or taking reasonable steps to stop the misconduct, Defendant

enabled it. Specifically, Defendant repeatedly paid the legal settlements

resulting from his son's actions. Upon information and belief, in one

such settlement, Dr. Philip Sobash was initially obligated to pay

$500,000 per image he continued to distribute, but ultimately negotiated

the amount down to $100,000 per image–demonstrating his access to

substantial funds and a desire to minimize accountability. These

settlement payments were reportedly provided by his father, Defendant

Dr. Frank Sobash, who, despite full knowledge of his son's conduct, continued to cover the legal fallout.

125.   Funding these settlements allowed his son to avoid the financial consequences of his behavior and continue victimizing women without meaningful deterrent. Defendant's financial support was a substantial factor in the continuation of his son's misconduct and therefore in the injuries suffered by Plaintiff. It was reasonably foreseeable that subsidizing this behavior would result in continued harm to others.

126.  However, the *Nymark* court simply found that a duty was not owed under the facts in that case after analyzing them pursuant to the six part test established in *Biakanja v. Irving*, 49 Cal2d 647, 122 P.2d 294, which looks to (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiffs, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame, and (6) the policy of preventing future harm.

127.  In analyzing the first *Biakanja* factor, whether or not the transaction was intended to affect plaintiffs, courts have held that a defendant's conduct is found to affect the plaintiff if the defendant commits the conduct with knowledge of plaintiff's circumstances as to the foreseeability of harm to Plaintiffs.

128.    In regard to the closeness of the connection between Defendants'
conduct and Plaintiff's injury, Defendant's' ongoing financial
enablement of his son's misconduct was firmly and intimately tied to
the harm because but for the actions and omissions of Defendant, –
specifically the payment of civil settlements that allowed his son to
escape accountability – Plaintiffs would not have been subjected to
harm, fear and shame . Because Defendant was in full control, it is
reasonably foreseeable that Plaintiff would rely on Defendant to be
reasonable and to protect her from the predatory conduct of his son.

129.    Defendant's actions are a substantial factor in Plaintiff's harm.

130.    Defendants' actions directly and proximately caused the injuries
suffered by Plaintiffs.

131.    Plaintiffs demand damages in an amount to be proven at trial.

132.    The elements of a cause of action for negligence are well established.
They are (a) a legal duty to use due care; (b) a breach of such legal duty; (c)
the breach as the proximate or legal cause of the resulting injury. (*Ladd v.
County of San  Mateo*  (1996) 12 Cal.4th 913, 917 [50Cal.Rptr.2d 309, 91 1
P.2d 496]

133.    However, the *Nymark* court simply found that a duty was not owed
under the facts in that case after analyzing them pursuant to the six part test
established in *Biakanja v. Irving*, 49 Cal2d 647, 122 P.2d 294, which looks to

(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame, and (6) the policy of preventing future harm.

134.  In analyzing the first *Biakanja* factor, whether or not the transaction was intended to affect the plaintiff; courts have held that a defendant's conduct is found to affect the plaintiffs if the defendant commits the conduct with knowledge of plaintiff's circumstances. *See e.g., Jolley v. Servicer Financial, LLC* (2013) 213 Cal.App.4th 872, 900.

135.   Defendant should have foreseen the harm being done to Plaintiff in regards to the closeness of the connection between Defendants' conduct and Plaintiff's injury.

136. Due to Defendants' negligent conduct Plaintiff suffered monetary loss, severe emotional stress at the impending loss of Plaintiff's reputation and more.

137.  Defendant had a reasonable duty of care to supervising his son that he knew was victimizing women on the internet as he had personal knowledge of his son's history and failed to take reasonable steps to prevent further harm.  His financial involvement gave him not only knowledge of his son's repeated offenses but also the power to

intervene–yet he chose instead to fund the consequences.

138. As a proximate result of not taking reasonable steps to protect the Plaintiff and that the sexual misconduct was foreseeable he is liable for his son's predatory behavior.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands the following relief:

A.   General, special, and economic damages resulting from Defendant's wrongful conduct no less than $1,000,000.00.

B.   Punitive damages;

C.   An award of attorneys' fees and costs;

D.   The creation of a constructive trust consisting of all funds Defendant has obtained due to his commercial distribution of Jane Doe's images;

E.   An injunction restraining Defendant from any further unauthorized use of Plaintiff's name, photograph, or private likeness; and

F.   Such other relief as this Court deems proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all so triable.

Dated: August 18, 2025           Respectfully  submitted


                                 <u>s/s Joseph C Crudo</u>

                                 Joseph C Crudo, Esq.
                                 Midway Law Firm APC

**VERIFICATION**

I am the attorney for JANE DOE PLAINTIFF that is unavailable and absent from the County. Upon information and belief, I avow that the facts herein are within my knowledge and to the contents thereof. The same is true of my knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters are believed to be true.

I declare under penalty of perjury that the foregoing allegations true and correct and that this Verification was executed in San Diego, California.

September 12, 2025                     s/s Joseph C. Crudo
                                      Joseph C. Crudo, Esq.